# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| In re:<br><br>GEOFFREY A. ROWE,<br><br>       Debtor. | Case No.  09-20446-RGM<br>(Chapter 7)<br><br>Contested Matter<br>Application for Compensation<br>of H. Jason Gold (Docket Entry 63) |

## MEMORANDUM OPINION

This case is before the court on the motion of H. Jason Gold for a stay pending appeal.  Mr. Gold is the chapter 7 trustee in this case.  He requested a trustee's fee of $17,254.61.  The court allowed a trustee's fee in the reduced amount of $8,020.00 because Mr. Gold did not properly or timely complete his duties as trustee.  11 U.S.C. §704(a)(1).  Mr. Gold appealed to the district court asserting that he is entitled to the full trustee's fee requested because a trustee's fee is a fixed commission.  11 U.S.C. §330(a)(7).  *Hopkins v. Asset Acceptance LLC (In re Salado-Nava)*, 473 B.R. 911 (BAP 9th Cir. 2012).  The question presented here is whether a stay pending appeal should be granted so that Mr. Gold may withhold from distribution to creditors the additional amount he seeks as compensation while the appeal is pending.  Fed.R.Bankr.Proc. 8005.

## Standard for Stay Pending Appeal

The applicant must meet a four-pronged test to obtain a stay pending appeal:  (1) likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to the other parties from granting the stay, and (4) service to the public interest from granting the stay.  *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970); *Hunt v. Bankers Trust Co.,* 799 F.2d

1060, 1067 (5ᵗʰ Cir. 1986); *Commonwealth of Virginia v. Shenandoah Realty Partners, L.P. (In re*

*Shenandoah Realty Partners, L.P.),* 248 B.R. 505, 510 (W.D.Va. 2000). *See also Winter v. Natural*

*Resources Defense Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) and

*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.,* 550 F.2d 189 (4ᵗʰ Cir.1977)

(standards for issuing preliminary injunctions).

     <u>Likelihood of Success on the Merits.</u>  Mr. Gold's prospects for success on the merits are

poor.  His argument is one of entitlement, that the 2005 amendment to §330(a)(7) of the Bankruptcy

Code entitles him to a fee computed in accordance with §326(a).[1]  Prior to the 2005 amendment,

many bankruptcy courts awarded compensation based on the lodestar method and treated §326 as

imposing a cap on the amount that could be awarded to a trustee.  *Hopkins v. Asset Acceptance LLC*

discusses the two approaches to calculating a trustee's fee and the effect of the amendment.  But, this

case does not concern the payment of the maximum trustee's fee possible.  This case concerns a

trustee who did not properly and timely discharge his duties.  Such a trustee will not be awarded the

maximum fee possible whether computed as a fixed commission or by the lodestar method.  *Hopkins*

makes clear that even if a trustee's fee is considered a commission and is computed under §326(a),

it will not always be awarded.  It is only presumed to be reasonable.  *Hopkins* states:

> Accordingly, absent extraordinary circumstances, chapter 7, 12 and 13 trustee fees should be presumed reasonable if they are requested at the statutory rate. Congress would not have set commission rates for bankruptcy trustees in §§326 and 330(a)(7), and taken them out of the considerations set forth in §330(a)(3), unless it considered them reasonable in most instances. Thus, absent extraordinary

---

[1]Section 330(a)(7) states:

In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326.

circumstances, bankruptcy courts should approve chapter 7, 12 and 13 trustee fees without any significant additional review.

*Id.* at 921.  It continues by matching the compensation to the trustee's duties under §704:

> Against this background, we must assume that Congress already has approved fees set as commissions in §326 as reasonable for the duties it has set out for such trustees in §704 and elsewhere in the Code.  In effect, Congress has set both the duties of a trustee and the "market" rate for compensation related to the delivery of those services.

*Id.* at 921.

*Hopkins* treats fees computed in accordance with §326 as presumptively reasonable in consideration of the duties undertaken by chapter 7 trustees.  However, extraordinary circumstances, which include not performing trustee duties, performing them negligently or inadequately, will result in a lesser fee.

In this case, the trustee did not properly discharge his duties.  He did not administer the estate expeditiously and in a manner compatible to the best interests of the parties in interest.  The trustee administered two properties.  All estate receipts, with the exception of nominal interest paid by the bank on the estate funds, were rents or proceeds of sale from two properties.  The trustee received the proceeds from the second sale on May 3, 2011.  They were followed by two small trailing receipts from the settlements on May 25, 2011 and June 13, 2011, of $202.24 and $45.32, respectively.  The trustee filed his final report on June 25, 2012, more than a year after receipt of the last trailing receipt.  Nothing was done nor was there anything of substance to be done during that twelve-month period.  Fourteen claims were filed, but distribution will be to three priority claims, one of which, a priority claim filed by the Internal Revenue Service, is almost six times the amount the trustee reports is available for distribution.  There were no objections to any claims.  There are

no docket entries from May 24, 2011, when the trustee filed his last report of the sale, until June 25,

2012, when the trustee filed his final report.[2]

Counsel for the trustee was unable to explain the delay in the administration of the case at

the hearing on the trustee's final report and application for compensation.  The time records of the

trustee and his law firm do not cast any light on this either.  The trustee's last time entry for work

he performed was February 17, 2011.  There were three time entries for his staff in May and June

2011 concerning receipt of the sales proceeds.  The last time entry for the trustee's law firm was June

3, 2011, also relating to the last funds from the sale.   The trustee simply put the case aside for a year

and did nothing to bring it to a conclusion.

Creditors were injured by the trustee's delay.  Creditors always prefer distributions earlier

than later.  Here, one of the three creditors who will receive a distribution is the debtor's former

spouse.  Congress made clear the importance of spousal claims in 2005 by altering the priority status

and the ability to discharge spousal claims, and requiring special notice with respect to such claims.

The remaining two distributions are to taxing authorities.  Interest unnecessarily continued to accrue

on the tax accounts on the amount that will be paid by the trustee, and the debtor will be required

to pay it.  Finally, during the period of delay, the trustee's bank charged the trustee $903.01 in fees.[3]

---

[2]One adversary proceeding was filed on March 22, 2010.  It did not involve the trustee and was closed on April 20, 2010 after entry of a consent order.

[3]The trustee's bank began charging a "Bank and Technology Services Fee" in August 2011.  The fee is in excess of 2.5% of the funds on deposit.  In this case alone, it totaled $903.01.  Ordinary bank service fees are chargeable to the estate and not the trustee.  The bank asserts that the additional fee is justified because in addition to the usual banking services, the bank provides software to manage and maintain the trustee's accounts in a format approved by the United States Trustee and equipment, generally computers and printers, on which the software operates.  Staffing and equipping a trustee's office are expenses of the trustee, not the estate.  Where, as here, the Bank and Technology Services Fee is in part payment for equipment provided to the trustee by the bank, the cost must be borne by the trustee.  The point in this case is different:  The fees would never have been incurred if the trustee had timely discharged his duties.

These fees were new and far exceeded the $3.24 in interest the bank paid on the account during this period.  Had the trustee promptly administered the estate, these fees would not have been incurred.

The second issue is the trustee's supervision of the case.  Two lawyers and one legal assistant expended 90.3 hours on the case as counsel to the trustee.[4]  The attorney's fee application initially sought compensation for 58.7 hours for a total of $14,165.00.  After meeting with the United States Trustee, Mr. Gold reduced the requested compensation for his law firm to $11,036.50.  The problem remained that the trustee's attorneys were billing the estate for work that was trustee work, not attorney work.  The court further reduced the legal fees to $2,500.00.  The trustee is charged with reviewing all professional applications – especially when they concern attorneys in his own law firm – and assuring that the requested fees are appropriate.  He simply did not do that in this case.

The trustee's fee in this case was reduced because of the trustee's failures in the administration of this estate.  The trustee failed to explain the delay in the administration of the estate, a delay that harmed the creditors and failed to properly review and submit the fee application for his law firm.  In these circumstances, the prospects of the trustee on appeal are poor.

**Irreparable injury if the stay is not granted**.  The trustee argues, with some validity, that he will be injured if he is required to make a full distribution at this time.  While he could theoretically recover any overpayment to creditors if he were to be successful on appeal, the cost to do so could effectively deny Mr. Gold his right to appeal.

**Absence of substantial harm to the other parties from granting the stay.**  While creditors are always injured by a delay in distribution, any harm could be remedied from the bond that will be required.

---

[4]The trustee and his trustee's staff expended an additional 24.8 hours on the case.

**Service to the public interest from granting the stay.**   There is no significant public

interest in this case other than to assure that the trustee's compensation was correctly computed and

that the bankruptcy system is transparent in its operation.

## Conclusion

In consideration of the foregoing, the court will grant a stay pending appeal effective upon

posting an appeal bond.[5]   The trustee will be directed to disburse all funds to the three creditors

except $9,234.61, which he may withhold pending appeal.

Alexandria, Virginia
October 12, 2012

/s/  Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

18066

---

[5]Mr. Gold argues that a bond is not necessary because he is already covered by a blanket bond.  That bond has a different purpose and different conditions.  It is to assure his faithful performance of his duties as trustee.  An appeal bond is different.  It protects the estate and the creditors in the event that the appeal is not successful.  Mr. Gold will be required to post a separate appeal bond in the amount of $750.00.